# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 840 | **DATE** | 7/25/2011 |
| **CASE TITLE** | J & J Sports Productions, Inc. vs. Valencia, et al. | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, plaintiff's motion for summary judgment [28] is denied. Defendants' motion for summary judgment [36] is granted. Judgment is entered in favor of defendants and against plaintiff in the sum of $1,225. Plaintiff's claims are dismissed in their entirety with prejudice.

*Philip G. Reinhard*

■[ For further details see text below.]

Electronic Notices.

## STATEMENT - OPINION

Plaintiff, J & J Sports Productions, Inc. brings this action against Rafael J. Valencia, Jr. and Restaurant Tecalitlan, Inc. Plaintiff claims defendant violated 47 U.S.C. § 605 et seq. (Count I), 47 U.S.C. § 553 (Count II) and committed the state law tort of conversion (Count III) when defendants unlawfully obtained and displayed the television broadcast of "Latin Fury: Julio Cesar Chavez, Jr. v. Jose Celaya, WBC Continental Americas Light Middleweight Championship Fight Program, Saturday February 9, 2008." ("Program") Plaintiff owned the exclusive nationwide television distribution rights for the Program. Plaintiff also claims breach of contract (Count IV) alleging nonperformance of a release agreement entered between the parties to settle the above claims for the sum of $15,000. Defendants paid $7,000 and plaintiff claims a contractual right to the remaining $8,000. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367 (a). The parties filed cross motions for summary judgment.

The material facts are undisputed. Plaintiff purchased the exclusive television distribution rights to the Program. During the Program's broadcast on February 9, 2008, a private investigator hired by plaintiff entered defendants' restaurant. The Program was showing on two televisions in the restaurant according to the investigator. The investigator saw the Program show at that location during the entire time he was there, approximately 57 minutes. During that time, there were 12 to 14 patrons. The restaurant had a capacity of 55 persons. Defendants did not purchase the right to show the Program from plaintiff. Based upon the rate card used by plaintiff for the Program, the price defendants would have had to pay for the right to show the Program was $800.

Defendant Rafael J. Valencia, Jr. is the president, shareholder and director of defendant Restaurant Tecalitlan, Inc. Defendants concede the Program was shown in the restaurant without any payment to plaintiff. The restaurant did not advertise that it would be showing the Program, did not impose a cover charge or other fee to customers in connection with the Program. An employee of the restaurant, other than Valencia, arranged for the showing of the Program. The same employee had also arranged for the showing of another pay-per-view boxing match at the restaurant without paying the broadcast licensor (King Vision) of

that fight.

After plaintiff's attorney contacted Valencia, Valencia executed a document entitled "Release." Pursuant to the "Release" defendants paid plaintiff $5,000 on or about June 27, 2008 and made four additional payments of $500 each in July, August, September, and October of 2008. The "Release" was tendered along with a letter from plaintiff's counsel which stated "this letter and the enclosed Release will not constitute any agreement however, until the settlement payments are received pursuant to terms. If the payments are not received in full and along the terms outline herein, we have no agreement and I must institute suit in the United States District Court with specific instructions to pursue maximum statutory damages, compensatory damages, attorneys' fees, and costs against you."

In November 2008, Valencia received a demand letter on behalf of King Vision (from the same attorney who represents plaintiff in this case) for the showing of the prior fight. Defendants made no further payments after receipt of this letter. The "Release" provides by its terms that if defendants made scheduled payments through March 1, 2009 then and only then would plaintiff release defendants of the claims. The document states "this release does not take effect until payments are made in full and/or by the due dates. J & J Sports Productions, Inc. reserves its right to institute suit and seek the full statutory amounts allowed under 47 U.S.C. sections 553, and 47 U.S.C. 605, if payments are not made in full and/or by the due dates."

Plaintiff's contract claim is easily disposed. Under Illinois law, which governs here, courts "interpret contracts with the goal of effectuating the parties' intent, giving contract terms their plain and ordinary meaning." Integrated Genomics, Inc. v. Gerngross, 636 F.3d 853, 861 (7th Cir. 2011). The language of the "Release" clearly states that the release does not take effect until payments are made in full and that plaintiff reserves the right to seek full statutory damages if such payments are not made. The letter from plaintiff's counsel to Valencia, tendered with the "Release" reinforces that this is the meaning the parties intended for the "Release." The letter clearly states "Per our agreement today . . . . [T]his letter and the enclosed Release will not constitute any agreement however, until the settlement payments are received pursuant to terms. If the payments are not received in full and along the terms outlined herein, we have no agreement and I must institute suit in the United States District Court with specific instructions to pursue maximum statutory damages, compensatory damages, attorneys' fees, and costs against you." The payments were not made and plaintiff seeks full statutory damages. The contract gave defendants the right to make all of the payments and get a release or not make the payments and face a suit for higher statutory damages. Defendants chose not to pay. Plaintiff chose to bring suit for higher statutory damages. The contract was not breached.

Plaintiff argues defendants violated 47 U.S.C. § 605.[1] Defendants concede a violation by the corporate defendant but contend plaintiff has already received $7,000 in payments which exceeds any damages the court could award for this violation. 47 U.S.C. § 605 (e) (3) (C) allows for the recovery of either actual damages suffered as a result of the violation and any profits of the violator attributable to the violation or statutory damages in the sum of not less than $1,000 or more than $10,000, as the court considers just, for each violation. Only one violation occurred here. Plaintiff seeks statutory, not actual, damages for that violation.

Statutory damages may be awarded "as the court considers just." 47 U.S.C. § 605 (e) (3) (C) (I) (II). "The Court has discretion both in deciding whether to award damages and in determining the amount of that award." Joe Hand Promotions, Inc. v. Croce, No. 5:10-CV-04177, 2011 WL 2581419, *5 (N.D. Cal. June 29, 2011). The evidence shows defendants would have paid $800 for a license to show the Program, did not advertise the fact the Program would be showing at the restaurant, and did not collect a cover charge. A total of 12-14 customers were in the restaurant while the Program was being shown. The evidence shows only one other violation by defendants and that involved a different license holder. The other violation occurred fairly close in time to the one at issue in this case.

Based on the undisputed evidence, the court finds the $7,000 defendants have already paid to plaintiff is just and sufficient compensation to plaintiff and that the award of any additional sums, whether as statutory

damages or conversion damages, would be unjust. $7,000 represents 8.75 times the $800 defendants would have had to pay to lawfully show the Program. It represents at a minimum $500 per each of the 12 to 14 patrons in the restaurant during the broadcast. None of the factors commonly considered by courts as bases for increasing damages for willful violations for purposes of direct or indirect commercial gain (i.e. repeated violations over an extended period of time, substantial unlawful monetary gain, advertising the broadcast or charging a cover charge or premiums for food or drink) are present. See King Vision Pay-Per View, Ltd. v. Zalazar, 653 F. Supp. 2d 335, 342 (S.D. N.Y. 2009). Plaintiff's motion for summary judgment is denied. Plaintiff's request for attorneys' fees incurred in conjunction with this suit is also denied as plaintiff did not prevail on its contract claim, conversion claim, or claim for damages for violation of 47 U.S.C. § 605 et seq. While it is undisputed defendants violated section 605 when the Program was displayed in the restaurant, the $7,000 received prior to commencement of suit satisfied that claim.[2]

Defendants also move for summary judgment and for attorneys' fees pursuant to the "Release." The "Release" provided for attorneys' fees to the prevailing party in any action brought pursuant to it. Defendants prevailed on the breach of contract claim brought by plaintiff on the "Release." Accordingly, defendant is entitled to an award of attorneys' fees incurred in defending this claim. Defendant's seek $1,225 in attorneys' fees representing 4.0 hours for defendant's counsel at $150 per hour and 5.0 for an associate at $125 per hour. These rates and the time spent are reasonable under the circumstances. Defendants are awarded $1,225 against plaintiff for attorneys' fees under the "Release."

For the foregoing reasons, plaintiff's motion for summary judgment is denied. Defendants' motion for summary judgment is granted. Judgment is entered in favor of defendants and against plaintiff in the sum of $1,225. Plaintiff's claims are dismissed in their entirety with prejudice.

---

1. Plaintiff's complaint also claims a violation of 47 U.S.C. § 553 but it makes no argument in its summary judgment motion on this claim and ordinarily, recovery can be made for a single incident only under one of these statutes or the other, not both. See J & J Sports Productions, Inc. v. 291 Bar & Lounge, LLC, 648 F. Supp. 2d 469, 471-72 (E.D. N.Y. 2009). Plaintiff has elected to seek damages under Section 605 and the court will proceed accordingly. Likewise, plaintiff has not advanced any argument in support of its conversion claim.

2. Rafael J. Valencia, Jr. also argues he cannot be held personally liable for the violation. While it is unnecessary to the resolution of the case to decide this issue, the court notes the record lacks evidence to establish personal liability on his part.